IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CANAL INDEMNITY CO., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> RONALD RICHARDSON and : <br> LINDA BULLARD, : <br> : <br> Defendants. : <br> : | CASE NO.: 5:14-CV-431 (WLS) |

## ORDER

Before the Court are Plaintiff Canal Indemnity's Motion for Summary Judgment (Doc. 29), Defendant Linda Bullard's Motion for Summary Judgment (Doc. 56), and Defendant Ronald Richardson's Motion for Summary Judgment (Doc. 57). Defendants Bullard and Richardson filed responses to Canal Indemnity's Motion (Docs. 39, 40), and Canal Indemnity filed a reply (Doc. 50). Canal Indemnity filed a response to Bullard's Motion (Doc. 60), Bullard replied (Doc. 65), and with leave from the Court, Canal Indemnity filed a sur-reply. (Doc. 69.) Canal Indemnity also responded to Richardson's Motion (Doc. 60), and Richardson filed no reply. The Court finds that all three Motions are now ripe for review.

## PROCEDURAL AND FACTUAL HISTORY

The following facts are derived from Canal Indemnity's Statement of Material Facts (Doc. 29-1) and Defendant Bullard's Response (Doc. 40-1), Defendant Bullard's Statement of Material Facts (Doc. 56-1), Defendant Richardson's Statement of Material Facts (Doc. 57-1), and the record in this case. Where relevant, the factual summary also contains undisputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits submitted, all of which are construed in a light most favorable to the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This action arises from a tragic incident that occurred over fifteen years ago involving a handgun purchased by Tiffany Hardware at Gray Highway Pawn that ultimately malfunctioned and misfired, killing William O. Bullard, III, Defendant Linda Bullard's son. In an underlying state court lawsuit, Linda Bullard alleged that Tiffany Hardware purchased the

handgun from Ronald Richardson, an owner of and salesperson at Gray Highway Pawn. Bullard alleged that upon discovering that the handgun was not functioning properly, Hardware took the handgun to Richardson at a liquor store where he also worked. Richardson looked at the gun, gave it back to Hardware, and told her to bring it to Gray Highway Pawn the following Monday. Bullard alleged that afterwards Hardware dropped the gun and a bullet discharged, struck, and killed William O. Bullard, III.

Plaintiff Canal Indemnity Co. filed this action seeking a declaratory judgment that (1) "[t]he claim submitted to the jury was based on Richardson's personal conduct and not as an executive officer, director, stockholder or employee of Gray Highway Pawn. Accordingly, Richardson is not an insured for the claim upon which damages were awarded" and (2) "Canal Indemnity's duty to defend ended when it paid the policy limit of $300,000 to satisfy a settlement." (Doc. 1 at 7.)  Defendant Richardson has filed a counterclaim that is essentially the inverse of Canal Indemnity's first claim, seeking a declaration that he is covered under the insurance policy and that Canal Indemnity is estopped from contesting his coverage because it waived its right to contest. (Doc. 7 at 14-15.) The ultimate issue in this action is the extent of the insurance coverage obligations, if any, Canal Indemnity owes to Richardson under the policy issued to Gray Highway Pawn, Inc. with respect to the wrongful death of William Bullard, Defendant Linda Bullard's son.  (*Id.*) Canal Indemnity subdivides that issue into the following:

> (1) whether Richardson is an insured under the policy issued to Gray Highway Pawn; (2) whether the policy limit has been exhausted by payment, [and] (3) whether Canal Indemnity is estopped from even contesting coverage as Bullard (and Richardson) contend.

(Doc. 59 at 5.)

In December 2001, Linda Bullard filed a lawsuit against Ronald Richardson and Gray Highway Pawn in the State Court of Fulton County (hereinafter referred to as the "state court lawsuit"). That lawsuit alleged that Ronald Richardson "as agent of GRAY HIGHWAY PAWN . . . negligently instructed Tiffany Hardware to keep the gun over the weekend and return with it on Monday." (Doc. 26-6 at 53.) The lawsuit further alleged, "Defendant RONALD RICHARDSON and GRAY HIGHWAY PAWN, INC. . . . are jointly and severally liable to the Plaintiff for the negligent conduct of RONALD RICHARDSON as a significant contributing cause of injury and death to William O. Bullard III." (*Id.*) Bullard fur-

2

ther demanded punitive damages from "RONALD RICHARDSON, as agent of GRAY HIGHWAY PAWN." (*Id.* at 54-55.)

In April 2002, State Farm Fire & Casualty, Co., which is not a party to this action, filed a declaratory judgment action in the Superior Court of Bibb County alleging that it owed no duty to defend Richardson in the state court lawsuit under a personal liability policy Richardson had with State Farm. In July 2002, the parties to that action agreed to a Consent Order relieving State Farm of any duty to defend Richardson and stating that Canal Indemnity would undertake the defense of Richardson. The Consent Order was signed by Richardson in his individual capacity and as an agent of Gray Highway Pawn; no agent for Canal Indemnity signed the Consent Order. (Doc. 40-3.) Canal Indemnity was not a party to that lawsuit or Consent Order.

In November 2014, Linda Bullard's tort allegations against Richardson and Gray Highway Pawn, where Richardson was employed, were tried to a jury in the Fulton County State Court. Canal Indemnity is not a party to the state court lawsuit but has provided for Richardson's defense. Throughout the course of the state court trial, Richardson's counsel, provided by Canal Indemnity, argued that Richardson was not acting as an agent for Gray Highway Pawn during the incidents alleged.

Before the state court jury was instructed, Defendant Bullard (who is the plaintiff in the state court lawsuit) withdrew the proposed jury charges regarding imposing liability on Richardson on the theory that he was acting as an agent for Gray Highway Pawn, thus shifting the theory of the claim against Richardson from one of agency liability to one of individual liability. (Doc. 59 at 3.) The state court lawsuit jury found in favor of Gray Highway Pawn and against Richardson, under the theory of individual negligence and awarded $6 million to Bullard. (*Id.*)

After the state court jury returned its verdict against Richardson, Bullard filed a motion under O.C.G.A. § 9-11-68(e). After Bullard filed her motion under § 9-11-68(e), the Parties informed the state court that they had reached an agreement whereby Bullard released her claims for "attorneys fees and other expenses" under O.C.G.A. § 9-11-68(e) against Richardson, Gray Highway Pawn, and Canal Indemnity in exchange for "the policy limits of the 300 thousand." (Doc. 29-5 at 121.) Bullard and her counsel signed a written release. (Doc. 1-5.) Canal Indemnity alleges that it agreed to this release in order "to extinguish the

3

additional exposure to Richardson" because Bullard would otherwise have sought "40% of the verdict, or an additional $2.4 million, as attorney's fees" under § 9-11-68(e). (Doc. 1 at 5.) On December 2, 2014, Ronald Richardson retained his own counsel for the state court lawsuit. (Doc. 39-1 at 2.) In compliance with a court order, a Canal Indemnity claims representative attended a December 9, 2014 post-trial settlement/mediation conference. There, a Canal Indemnity claims representative offered additional funds to settle Bullard's claim against Richardson. (Doc. 39-1 at 2.) On December 11, 2014, Canal Indemnity issued a reservation of rights to Richardson. (Doc. 29-6.)

On July 13, 2015, after the jury returned its verdict, the state court judge granted Richardson's motion for a directed verdict, which had been reserved pending the jury's verdict, and entered judgment in favor of Richardson. (Doc. 55-1.) Bullard has appealed the state court's directed verdict in favor of Richardson and seeks reinstatement of the jury's verdict against Richardson on a theory of individual negligence. (*See* Doc. 61.) According to the Parties' briefing and the absence of any notice to the contrary, that appeal remains pending in the Court of Appeals of Georgia.

## STANDARDS OF REVIEW

Canal Indemnity moves for summary judgment only as to its request for a declaration that Richardson is not an insured under the policy issued to Gray Highway Pawn, and also, in effect, as to Richardson's counterclaim for a declaration that Canal Indemnity is estopped from contesting coverage. (Doc. 29-12 at 1, 14.) Canal Indemnity's Motion for Summary Judgment does not address its other claim that the policy limit was exhausted when Canal Indemnity paid $300,000 to Bullard after the jury returned a verdict. (*See* Doc. 29-12.) Bullard and Richardson move for summary judgment as to both issues raised in Canal Indemnity's complaint and as to Richardson's counterclaim. (Docs. 56 at 1; 57 at 1.)

I.  **Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue

4

of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsuhita*, 475 U.S. at 586 (citations omitted). Instead, the non-movant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no

genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.     Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, Canal Indemnity properly filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Doc. 29-1.) Bullard filed a response but did not respond to each of Canal Indemnity's numbered material facts as required by the rules (Doc. 40-1), and Richardson did not respond to Canal Indemnity's statement of undisputed facts at all (*see* Doc. 39). Bullard and Richardson both properly filed summary judgment motions accompanied by a statement of undisputed facts (Doc. 56-1), and Canal Indemnity filed no response (*see* Docs. 59, 60).

## **ANALYSIS**

In the state court lawsuit, the only claim against Richardson submitted to the jury was against Richardson in his individual capacity, not as an agent of Gray Highway Pawn. The jury was not asked to make a finding regarding Richardson's agency. (*See* Doc. 1-4.) Neither Defendant contests that Richardson is only covered under the Canal Indemnity policy for acts within the scope of his employment or within the scope of his duties as an executive officer. (Docs. 1-6; 29-1 at 5-6; *see* Docs. 39, 40, 40-1.)

Canal Indemnity seeks declaratory judgment, arguing that the only claim against Richardson submitted to the jury was against Richardson in his individual capacity, not as an agent of Gray Highway Pawn. (Doc. 29.) Bullard argues that the fact Richardson is an "insured" under the Canal Indemnity Policy has been established by collateral estoppel. (Doc. 40 at 7-9.) And both Defendants argue that Canal Indemnity is estopped from asserting that Richardson is not covered because it did not issue a reservation of rights sooner. (Docs. 39;

6

40.) Finally, Canal Indemnity asserts that even if it is estopped from asserting non-coverage, its duty to defend terminated when it paid $300,000 in exchange for Bullard's releasing her claim under O.C.G.A. § 9-11-68(e).

**I.  Whether Canal Indemnity Is Estopped from Asserting Non-Coverage**

Defendant Richardson's counterclaim seeks a declaratory judgment that Canal Indemnity:

> has waived any purported right to contest the applicability and viability of the liability insurance coverage and legal defense obligations under the subject commercial general liability insurance policy, and, therefore, plaintiff is obligated to continue to exercise its duty to provide the liability insurance coverage and legal defense obligations under the subject commercial general liability policy . . . .

(Doc. 7 at 14.) Defendants Bullard and Richardson argue that even if Richardson is not covered under the terms of the Canal Indemnity policy, they are entitled to summary judgment as to Richardson's counterclaim because Canal Indemnity is estopped from asserting non-coverage at this juncture. (*See generally* Docs. 39, 40.) The Court notes Canal Indemnity's argument that Bullard has no standing to assert estoppel. (Doc. 50 at 7 n.1.) Indeed, Bullard has no standing to assert estoppel since she is not an insured under the Canal Indemnity policy. *Capitol Indem. Corp. v. Fraley*, 597 S.E.2d 601, 603 (Ga. Ct. App. 2004). However, regardless of whether Bullard has standing to assert estoppel, Bullard has no standing to seek summary judgment on a counterclaim to which she is not a party and has not moved to join. (*See* Docket.) Therefore, Bullard's Motion for Summary Judgment (Doc. 56) is **DENIED-IN-PART** to the extent she seeks summary judgment on Richardson's counterclaim. *See* Fed. R. Civ. P. 56(a).

The Georgia Supreme Court has explained the three options available to an insurer when a lawsuit is pending against its insured:

> First, the insurer can defend the claim, thereby waiving its policy defenses and claims of non-coverage. Second, the insurer can deny coverage and refuse to defend, leaving policy defenses open for future litigation. Or, third, the insurer can defend under a reservation of rights . . . A reservation of rights is a term of art in insurance vernacular and is designed to allow an insurer to provide a defense to its insured while still preserving the option of litigating and ultimately denying coverage. At a minimum, the reservation of rights must fairly inform the insured that, notwithstanding the insurer's defense of the action, it disclaims liability and does not waive the defenses available to it against the in-

7

> sured. Thus, a reservation of rights is only available to an insurer who undertakes a defense while questions remain about the validity of the coverage.

*Hoover v. Maxum Indem. Co.*, 730 S.E.2d 413, 416 (Ga. 2012) (citations and punctuation omitted). "[W]here an insurer does not unambiguously reserve its rights, uncovered claims may be subject to the doctrine of waiver or estoppel if the insurer assumes the defense of an action or continues such defense with knowledge that a claim is not covered." *Facility Inv. LP v. Homeland Ins. Co. of New York*, 741 S.E.2d 228, 233 (Ga. Ct. App. 2013) (citing *World Harvest Church v. GuideOne Mut. Ins. Co.*, 695 S.E.2d 6 (Ga. 2010)). An insurer must reserve its rights "reasonably promptly" after receiving actual or constructive knowledge of a coverage defense. *Builders Insur. v. Tenenbaum*, 757 S.E.2d 669, 675-76 (Ga. Ct. App. 2014); *World Harvest*, 695 S.E.2d at 9-10.

Bullard and Richardson contend that Canal Indemnity knew from the time it undertook Richardson's defense that a coverage defense existed. Indeed, Canal Indemnity's investigation, as early as 2002, uncovered facts indicating the possibility of non-coverage. As Bullard and Richardson note, in its June 27, 2002 response to Bullard's first set of interrogatories, Gray Highway Pawn, represented by Canal Indemnity, stated, "Ronald Richardson was not working at Gray Highway Pawn, Inc. when Plaintiff returned the gun . . . ." (Doc. 40-10 at 3.) In that same response, Gray Highway Pawn stated, "Defendant denied paragraph 56 [of the amended complaint] because Ronald Richardson did not act as owner, salesperson or agent in the sale of the gun to the Plaintiff." (Doc. 40-10 at 3.) Further, in his opening statement at the trial in November 2014, Richardson's counsel, provided by Canal Indemnity, set forth a theory of the case that Richardson was not approached by Tiffany Hardware in his capacity as an agent or employee of Gray Highway Pawn: "And she asked Mr. Richardson, as a friend, not in a relationship with a . . . customer/seller . . ." (Doc. 40-11 at 207.) And at the close of Bullard's case in the state court trial, Richardson moved for a directed verdict on the theory that Richardson's actions giving rise to Bullard's claims were not undertaken in his capacity as an agent of Gray Highway Pawn only. (Doc. 29-4 at 219.)

Canal Indemnity argues that it could not have known at the inception of the state court lawsuit that it had a coverage defense because Bullard's initial claim against Richardson was against him as an agent of Gray Highway Pawn. Canal Indemnity argues that it did not

have actual or constructive knowledge of the coverage defense that Richardson in his individual capacity is not covered under the policy until the theory of liability changed mid-trial.

Normally, an insurer's duty to defend and obligation to reserve its rights if it undertakes to defend the insured are not triggered by the insurer's knowledge of the underlying facts but by the actual claims asserted against the insured. *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998) ("We look to the allegations of the complaint to determine whether a claim covered by the policy is asserted."); *see also Facility Inv., LP v. Homeland Ins. Co. of New York*, 741 S.E.2d 228, 233 (Ga. Ct. App. 2013) ("Once such investigation shows uncovered claims, however, the insurer can deny coverage or file a declaratory judgment action to determine its obligations."); *cf. Facility Inv.*, 741 S.E.2d at 232-33 ("Here, [the insurance company] defended [the insured] in the underlying case, knowing that the plaintiffs asserted claims for losses that were not covered under the Policy."). However, the Georgia Supreme Court has held that a different rule applies "when the complaint on its face shows no coverage, but the insured notifies the insurer of factual contentions that would place the claim within the policy coverage." *Colonial Oil Indus. Inc. v. Underwriters*, 491 S.E.2d 337, 338 (Ga. 1997); *see also Hilde v. U.S. Fire Ins. Co.*, 363 S.E.2d 69, 72 (Ga. Ct. App. 1987) ("We as a court have held previously that if an insurer discovers a state of facts possibly constituting noncoverage, the insurance company may seek to enter into a reservation of rights with the insured or give the insured a timely unilateral notice of its reservation and nonwaiver of rights . . . ."). In *Colonial Oil*, the Court of Appeals went on to hold,

> the insurer has an obligation to give due consideration to its insured's factual contentions and to base its decision on "true facts." The requirement that an insurer base its decision on true facts will necessitate that the insurer conduct a reasonable investigation into its insured's contentions. To relieve an insurer of any duty to investigate its insured's contentions would allow the allegations of a third-party to determine the insured's rights under its contract. Placing a duty of investigation on insurers in these limited circumstances is not an unreasonable burden, especially in light of the availability of the "procedurally safe course" of providing a defense under a reservation of rights and filing a declaratory judgment action to determine its obligations. An insurer who fails to investigate its insured's contentions and refuses a defense will be liable for a breach of the duty to defend if a reasonable investigation at the time would have established the potential for coverage.

*Id.* at 337-38 (citing *Loftin v. U.S. Fire. Ins. Co.*, 127 S.E.2d 53 (Ga. Ct. App. 1962)).

9

Here, the state court complaint on its face alleged a claim covered under the policy, but in *Colonial Oil*, the complaint alleged a claim that was not facially covered. However, like the insurer in *Colonial Oil*, Canal Indemnity learned of facts contrary to the allegations in the complaint, as evidenced by its consistent insistence that Richardson was not functioning as an agent of Gray Highway Pawn during the alleged events. The Court finds the rationale behind *Colonial Oil*'s holding that an insurer should base its decisions regarding whether to reserve its rights and whether to defend its insured on "true facts" is applicable to this case, though the cases are distinguishable. The facts in the record show that as early as 2002, Canal Indemnity was aware of "true facts" that Richardson was not acting as an agent of Gray Highway Pawn during the events alleged in Bullard's state court lawsuit. These "true facts" could have amounted to a coverage defense. At that time, Canal Indemnity could have chosen the "procedurally safe course" and reserved its rights while continuing to defend Richardson, since, indeed, the claim alleged against Richardson triggered a duty to defend. Because Canal Indemnity did not do this, the allegations of Bullard, a third party, determined Richardson's rights. Though Canal Indemnity is not responsible for Bullard's abrupt change-in-course at the end of trial, a reservation of rights twelve years prior could have provided Richardson the opportunity to consider the prudence of obtaining his own counsel, particularly where Canal Indemnity's defense strategy for the majority of the case was simply to deny Richardson's agency for Gray Highway Pawn rather than denying Richardson's liability altogether.

The Court notes that the duty to defend and the duty to indemnify are distinct. *City of Atlanta v. St. Paul Faire & Marine Ins. Co.*, 498 S.E.2d 782, 785 (Ga. Ct. App. 1998) ("An insurer's duty to defend and its duty to indemnify are separate and independent obligations."). *Colonial Oil*'s holding addressed an insurer's liability for breach of duty to defend rather than breach of duty to indemnify. However, in determining which of the three options outlined in *Hoover* to choose, an insurance company must surely consider the two together. Where an insurer may have a duty to defend but also a coverage defense, a "procedurally safe" option is available –a prompt reservation of rights. Canal Indemnity did not issue a reservation of rights to Richardson until December 11, 2014, at least twelve years after Canal Indemnity first became aware that Richardson's non-coverage was a possible defense. (Doc. 29-6.) *State Farm Mut.Auto. Ins. Co. v. Wright*, 224 S.E.2d 796, 798 (Ga. Ct. App. 1976) ("A liability insur-

er with knowledge of noncompliance by its insured of a condition of the policy which could be a ground of forfeiture of coverage, which assumes and conducts the defense of an action brought against the policyholder, is thereafter estopped in an action upon the policy from asserting such forfeiture or nonconverage. However, the insurer may avoid the estoppel by informing the insured that, notwithstanding its defense of the action, it disclaims liability and does not waive the defenses available to it against the insured."). While "[t]he breach of the duty to defend . . . should not enlarge indemnity coverage beyond the parties' contract," the performance of the duty to defend without regard for whether the contract requires indemnity can prejudice an insured. *Colonial Oil*, 491 S.E.2d at 338.

Georgia courts have found insurance companies' reservations of rights to be timely where periods of sixteen and twenty-four days elapsed between the insurer's learning of the basis for non-coverage and issuing a reservation of rights. *Moody v. Penn. Millers Mut. Ins. Co.*, 263 S.E.2d 495, 496 (Ga. Ct. App. 1979) (holding that insurer was not estopped from asserting a coverage defense where there was only a sixteen-day delay before the insurer issued a reservation of rights and the insureds expressly agreed to the reservation of rights); *Winters v. Gov't Emp. Ins. Co.*, 209 S.E.2d 32, 33 (Ga. Ct. App. 1974) (suggesting that a period of twenty-four days would not be "untimely" if the reservation of rights is otherwise sufficient). Courts have found reservations of rights to be untimely where longer periods of time have elapsed. *E.g.*, *Tenenbaum*, 757 S.E.2d at 675-76 (finding reservation of rights untimely where insurer became aware of defense in February 2010 and did not issue supplemental reservation of rights until September 2012); *see also Daniel v. Safeway Ins. Co.*, 406 S.E.2d 266 (Ga. Ct. App. 1991) (finding that a question of fact remained as to whether an insurance company was estopped from asserting non-coverage since it had potentially learned of non-coverage at least ten months prior to filing declaratory judgment action).

The Court finds no genuine dispute of material fact that Canal Indemnity became aware of "true facts" that a coverage defense was available as early as 2002. Canal Indemnity's reservation of rights, issued nearly twelve years after Canal Indemnity became aware of "true facts" that a coverage defense was available, was not reasonably prompt as a matter of law. The Court further finds that Richardson was prejudiced by Canal Indemnity's failure to timely reserve its rights because Canal Indemnity undertook his defense for twelve years and argued primarily that Richardson was not acting as an agent of Gray Highway Pawn at the

time of the alleged events rather than that Richardson simply did not act negligently. The Court therefore concludes Canal Indemnity is estopped from asserting non-coverage. Accordingly, the Court **GRANTS-IN-PART** Richardson's Motion for Summary Judgment (Doc. 57) as to the issue of Canal Indemnity's waiver by estoppel of its right to assert non-coverage.

## II. Whether Richardson Is Insured under the Canal Indemnity Policy for Purposes of Bullard's Claim against Him as an Individual

Canal Indemnity seeks a declaratory judgment that "[t]he claim submitted to the jury was based on Richardson's personal conduct and not as an executive officer, director, stockholder, or employee of Gray Highway Pawn. Accordingly, Richardson is not an insured for the claim upon which damages were awarded." (*Sic.*) (Doc. 1 at 7.) Having waived by estoppel its coverage defense, Canal Indemnity is obligated to defend and indemnify Richardson under the terms of the policy and therefore the issue of whether the claim presented to the state court jury was covered under the terms of the policy is moot. The Court therefore **DENIES** Canal Indemnity's Motion for Summary Judgment (Doc. 29) and **GRANTS-IN-PART** Bullard's and Richardson's Motions for Summary Judgment (Docs. 56, 57) as to the issues of whether the state court claim was solely against Richardson as an individual and not an agent of Gray Highway Pawn and whether that claim is covered under the terms of the policy.

## III. Whether Canal Indemnity's Duty to Defend Ended When It Paid $300,000 to Bullard as a Settlement of Bullard's O.C.G.A. § 9-11-68(e) Claim

Canal Indemnity has not moved for summary judgment on the issue of whether the policy limit has been exhausted, but Defendants Richardson and Bullard have. (Docs. 29-12; 56-2 at 14-18; 57-2 at 10-14.) In its response to Defendants' Motions for Summary Judgment, Canal Indemnity indicates that the issue would be moot if no coverage exists. (Doc. 60 at 12 ("Essentially, [Defendants] contend that Canal Indemnity's payment was voluntary and does not exhaust the limits applicable to the claim –assuming, of course, that coverage exists in the first place."). However, because the Court has found that Canal Indemnity is estopped from asserting non-coverage, the Court must consider whether the policy limit has been exhausted.

In considering whether Canal Indemnity's duty to defend ended when it paid $300,000 in exchange for Bullard's abandoning her claim under O.C.G.A. § 9-11-68(e), the Court first looks to the plain language of the insurance policy. *Peachtree Cas. Ins. Co. v. Kim*, 512 S.E.2d 46, 47 (Ga. Ct. App. 1999) ("Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms."). The Court also looks to the policy as a whole. *S & T Timber v. Southern Gen. Ins. Co.*, 400 S.E.2d 379, 380 (1990) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.") (punctuation omitted) (quoting O.C.G.A. § 33-24-16).

Gray Highway Pawn held an insurance policy with Canal Indemnity that covered bodily injury claims. The policy reads, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'. . . ." (Doc. 1-6 at 6.) The policy further allows Canal Indemnity discretion to "investigate any 'occurrence' and settle any claim or 'suit' that may result." (*Id.* at 6.) "Suit" is defined as "a civil proceeding in which damages because of 'bodily injury,' . . . to which this insurance applies are alleged." (*Id.* at 18.) The policy provides, "Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C." (*Id.*) Bodily injury claims are included under Coverage A. (*Id.* at 6.) The policy limit is $300,000. (*Id.* at 34.) The policy does not define the term "damages," though it does say, "Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (*Id.* at 6; *see generally Id.*)

After the state court jury returned its verdict against Defendant Richardson, Bullard filed a motion under O.C.G.A. § 9-11-68(e), which provides:

> Upon motion by the prevailing party at the time that the verdict or judgment is rendered, the moving party may request that the finder of fact determine whether the opposing party presented a frivolous claim or defense. In such event, the court shall hold a separate bifurcated hearing at which the finder of fact shall make a determination of whether such frivolous claims or defenses were asserted and to award damages, if any, against the party presenting such frivolous claims or defenses. Under this subsection:
> > (1) Frivolous claims shall include, but are not limited to, the following:
> > > (A) A claim, defense, or other position that lacks substantial justification or that is not made in good faith or that is made with

13

> malice or a wrongful purpose, as those terms are defined in Code Section 51-7-80;
> (B) A claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position; and
> (C) A claim, defense, or other position that was interposed for delay or harassment;
>
> (2) Damages awarded may include reasonable and necessary attorney's fees and expenses of litigation . . .

After Bullard filed her § 9-11-68(e) motion, the Parties executed a release, stating that Bullard released her claims for "attorneys fees and other expenses" under O.C.G.A. § 9-11-68(e) against Richardson, Gray Highway Pawn, and Canal Indemnity in consideration of "the sum of Three Hundred Thousand Dollars and 00/100 ($300,000.00) policy limits for Canal Indemnity Company Policy #GLG11689." (Doc. 1-5 at 1.)

Richardson and Bullard argue that this settlement payment did not constitute "damages" under the terms of the policy. Richardson and Bullard are correct in asserting that ordinarily, under Georgia law, attorney's fees are not considered damages but are instead a distinct and ancillary award. (Docs. 56-2 at 16; 57-2 at 12 (citing *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 780 (11th Cir. 2011).) In *Alea*, the Eleventh Circuit considered whether an attorney's fees award under O.C.G.A. § 13-6-11 constituted "damages" under an insurance policy. The court held,

> [E]ven where attorneys' fees are recoverable under O.C.G.A. § 13–6–11, they are ancillary to a plaintiff's damages claim and require proof of an additional element. That 'attorneys' fees' would be subsumed within the Policy's reference to 'damages' is not consistent with a plain, ordinary-meaning reading of the Policy. Furthermore, that attorneys' fees are part of the 'expenses of litigation' under § 13–6–11 does not mean they become 'damages' under the Policy. The Policy covers damages and costs but notably does not mention attorneys' fees.

*Id.* (citations omitted).

Like attorney's fees awarded under § 13-6-11, attorney's fees are not recoverable under § 9-11-68(e) unless relief has been awarded on an underlying claim. *4WD Parts Ctr., Inc. v. Mackendrick*, 579 S.E.2d 772, 778-79 (Ga. Ct. App. 2003) ("Attorney fees are not recoverable under OCGA § 13–6–11 where there is no award of damages or other relief on any underlying claim."). And as with attorney's fees awarded under § 13-6-11, attorney's fees awarded

14

under § 9-11-68(e) are ancillary to the underlying claim, requiring a bifurcated hearing and proof of an additional element. *Alea London Ltd.*, 638 F.3d at 780. Section 9-11-68(e) reads, "Damages awarded may include reasonable and necessary attorney's fees and expenses of litigation . . ." Likewise, § 13-6-11 reads, "The expenses of litigation generally shall not be allowed as a part of the damages; but . . . [in certain circumstances], the jury may allow them." While it would appear that the language of § 9-11-68(e)(2) explicitly includes attorney's fees awarded under the section as "damages," the Court finds that the language in § 13-6-11 reads similarly, stating that attorney's fees are not ordinarily damages but may be awarded as such by a jury under certain circumstances. The Eleventh Circuit found that an attorney's fees award under § 13-6-11 was nevertheless not "damages" under the plain meaning of the term as used in the insurance policy.

Indeed, this understanding comports with the policy's explanation of what "damages because of bodily injury" include. (Doc. 1-6 at 6.) In *Dixon v. Home Indem. Co.*, 426 S.E.2d 381 (Ga. Ct. App. 1992), the Georgia Court of Appeals held that an attorney's fees award under O.C.G.A. § 9-15-14, which allows a movant to seek attorney's fees and expenses where a lawsuit was frivolous, constituted "sanctions" under an insurance policy that expressly excluded "sanctions" from the category of "damages" that were covered under the policy. Just as the policy in *Dixon* explicitly excluded "sanctions" from the category of covered "damages," the policy here explicitly *includes* "damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury'" in the category of "damages because of bodily injury" and makes no reference to attorney's fees, litigation expenses, or damages for a frivolous defense. (Doc. 1-6 at 6.) The policy does explicitly cover "attorneys fees incurred by [Canal Indemnity] in the defense of that indemnitee, necessary litigation expenses incurred by [Canal Indemnity] and necessary litigation expenses incurred by the indemnitee at [Canal Indemnity's] request" under the Supplementary Payments section. (Doc. 1-6 at 11.) The Supplementary Payments section also provides that Canal Indemnity will pay "all costs taxed against the insured in the 'suit.'" (*Id.*) "Costs" are not defined in the policy, but the term's ordinary meaning under Georgia law does not include attorney's fees. *Bowers v. Fulton Cnty.*, 183 S.E.3d 347, 348 (Ga. 1971). The Court finds no language in the policy indicating the parties contemplated that Canal Indemnity would be obligated to indemnify its insured for an opponent's attorney's fees, only that Ca-

nal Indemnity would be responsible for its own and its indemnitee's attorney's fees. *See Alea London Ltd.*, 638 F.3d at 768 ("There is no language in this Policy provision, or any other provision of the Policy cited by AHS, that leads to the conclusion that the insurance contract contemplated that Alea would indemnify AHS for its opponents' attorneys' fees.").

The policy specifies that Canal Indemnity is authorized to settle "any claim or 'suit' that may result." (Doc. 1-6 at 6.) Read together with the rest of the paragraph, the Court finds that the phrase "may result" means claims or suits that may result from bodily injury or property damage. Canal Indemnity's responsibility to indemnify for such a settlement is limited to $300,000, the amount it will pay for damages under the Limits of Insurance Sections, and its "right and duty to defend end when [it has] used up the applicable limit of insurance in the payment of judgment or settlements under Coverages A or B or medical expenses under Coverage C." (*Id.* at 2, 6, 13.) Here, the Court has already found that the payment in exchange for Bullard's release was not covered by the applicable Coverage A, and Coverages B and C are inapplicable to Bullard's claim. (*See Id.* at 9-10.) Thus, Canal Indemnity has not used up the applicable limit in payment of a settlement under Coverage A. Furthermore, the Bullard release does not even meet the policy's definition of "agreed settlement," which is "a settlement and release of liability signed by [Canal Indemnity], the insured and the claimant or the claimant's legal representative," because only Bullard and her counsel signed the release. (Docs. 1-5; 1-6 at 14.)

The Court now addresses the release executed by Bullard, which expressly refers to the $300,000 payment as the "policy limits for Canal Indemnity Company Policy #GLG11689." [1] (Doc. 1-5; *see also* Doc. 34 at 6.) A settlement agreement is a contract, and Bullard is bound by its terms. *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987); *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985). "Words in a contract are to be given their plain and ordinary meaning, and it is not for the court to add or subtract any language from the face of a clearly worded agreement," and "[t]he Court's role is to determine the intention of the parties from the language of the agreement, the apparent objects to be

---

[1] The Court notes that Richardson argues in his response brief to Canal Indemnity's Motion for Summary Judgment that Bullard's release of her O.C.G.A. § 9-11-68(e) claim is invalid under O.C.G.A. § 33-7-12. (Doc. 39 at 6-7.) However, because Canal Indemnity did not move for summary judgment on the issue of whether the policy limit had been exhausted, the Court finds that this argument, to the extent it was raised in response to Canal Indemnity's Motion for Summary Judgment, was extraneous and un-responsive. And because neither Richardson nor Bullard raised this argument in their own Motions for Summary Judgment or incorporated it by reference to Doc. 39 (*see* Docs. 56, 57), the Court considers this argument abandoned.

16

accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement." *Schwartz*, 807 F.2d at 905 (citations omitted).

However, at issue here is the enforcement of the Canal Indemnity insurance policy, not the enforcement of the release. Because the Court has found that payment of attorney's fees under O.C.G.A. § 9-11-68(e) is not covered under the policy, the only scenario in which the policy could be found to have been exhausted is if the Court were to find that the policy itself had been modified by the release. Insurance contracts may be modified or altered just as any other contract may. *Rabun & Assoc. Constr., Inc. v. Berry*, 623 S.E.2d 691, 695 (Ga. Ct. App. 2005). A contract required by law to be in writing may only be altered in writing. *Augusta S. R. Co. v. Smith & Kilby Co.*, 33 S.E. 28, 28-29 (Ga. 1899). An insurance contract must be in writing. *Heisley v. Allied Am. Mut. Fire Ins. Co.*, 30 S.E.2d 285, 287 (Ga. Ct. App. 1944). Therefore, any modification to an insurance contract must also be in writing. While an insurance contract can be modified with the agreement of the covered individual, the insurer, and the named insured, there is no proof that such has been done here. *Ericson v. Hill*, 137 S.E.2d 374, 375 (Ga. Ct. App. 1964). The release is signed only by Linda Bullard and her counsel. (Doc. 1-5.) Bullard is not a party to the insurance policy and obviously does not have authority to modify its terms. No other writing purportedly modifying the terms of the policy has been put into evidence to show that Richardson, Gray Highway Pawn, and Canal Indemnity agreed to modify the terms of the policy to allow the settlement of a claim that would not ordinarily fall under the policy's coverage to satisfy the policy limit and exhaust Canal Indemnity's duty to defend and indemnify.

For those reasons, the Court finds that under the terms of the Canal Indemnity policy, the policy limit was not exhausted by the payment of $300,000 in exchange for Bullard's releasing her right to a claim that would not have been covered under the terms of the policy. The Court therefore **GRANTS-IN-PART** Richardson and Bullard's Motions for Summary Judgment (Docs. 56, 57) as to that issue.

## CONCLUSION

For the reasons stated herein, the Court **DENIES** Canal Indemnity's Motion for Summary Judgment (Doc. 29), **DENIES-IN-PART** and **GRANTS-IN-PART** Bullard's Motion for Summary Judgment (Doc. 56), and **GRANTS** Richardson's Motion for Sum-

mary Judgment (Doc. 57). The Court finds no genuine issues of material fact as to whether Canal Indemnity is estopped from asserting non-coverage or whether the Canal Indemnity insurance policy was exhausted by the payment of $300,000 in exchange for Bullard's release of her O.C.G.A. § 9-11-68(e) attorney's fees claim. It is hereby **DECLARED** that Canal Indemnity is estopped from asserting non-coverage. Having so waived its coverage defense, Canal Indemnity would therefore be obligated to defend and indemnify Richardson under the terms of the policy and therefore the issue of whether the claim presented to the state court jury was covered under the terms of the policy is moot. It is further **DECLARED** that the Canal Indemnity insurance policy was not exhausted by the payment of $300,000 in exchange for Bullard's release of her O.C.G.A. § 9-11-68(e) attorney's fees claim.

Accordingly, **JUDGMENT** shall be entered in Defendant Richardson's favor as to his counterclaim that Canal Indemnity has waived by estoppel its right to assert non-coverage. Further, **JUDGMENT** shall be entered in Defendant Bullard and Richardson's favor as to the issue of whether the claim presented to the state court jury is covered under the terms of the policy since that issue is mooted by Canal Indemnity's waiver by estoppel. Finally, **JUDGMENT** shall be entered in Defendant Bullard and Richardson's favor as to the issue of the policy limit's exhaustion.

**SO ORDERED**, this 31st day of March, 2016.

/s/ W. Louis Sands  
**W. LOUIS SANDS, SR. JUDGE**  
**UNITED STATES DISTRICT COURT**